

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2006

# Lengkong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1948

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lengkong v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1352.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1352

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 05-1948 & 05-1949

———

BASTIAN LENGKONG,
TRULLY MAGDALENA KAMBEY

Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES; ASSISTANT SECRETARY
OF THE U.S. DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR OF THE NEWARK, NEW JERSEY FIELD OFFICE
OF THE BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT;
UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Respondents

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A96-266-131; A96-266-132)

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 31, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, Circuit Judges.

(Filed:  March 31, 2006)

———

OPINION OF THE COURT

VAN ANTWERPEN, <u>Circuit Judge</u>.

Petitioner Bastian Lengkong and his wife, Trully Magdalena Kambey ("Petitioners"),[1] both ethnic Chinese natives of Indonesia, seek review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and for the reasons set forth below, we will deny the petition for review.

## I.

Because we write solely for the parties, we state the facts only as they pertain to our analysis. Lengkong and his wife claim persecution in Indonesia on account of their Chinese ethnicity and Christian religion. Lengkong entered the United States as a nonimmigrant visitor for pleasure on July 9, 1997. He remained in this country beyond the authorized six-month period of stay. Kambey entered the United States on February 2, 2002, as a nonimmigrant visitor for pleasure, and also remained in the country beyond the authorized period. Lengkong filed an application for asylum on April 7, 2003, with his wife as a derivative.[2]

---

[1] Petitioner Kambey's application is derivative of Lengkong's; she did not file a separate application.

[2] Lengkong filed his application for asylum more than one year after entering the United States. For this reason, the IJ denied this application as time-barred pursuant to 8 C.F.R § 208.4(a)(2) and also concluded that Lengkong did not demonstrate that "changed

2

At a hearing before an IJ, Lengkong produced a baptismal certificate and testified that he regularly attended church while in Indonesia and does so twice a week in New Jersey. Lengkong testified that, because of his Christian faith, he fears harm by Muslim extremists if he returns to Indonesia. He testified that in Indonesia, Muslims terrorize Christian churches and try to prevent Christians from practicing their religion freely. Lengkong also testified that while in Indonesia, he was frequently asked if he was a Christian by Muslims.

Lengkong's wife, Kambey, also testified before the IJ that she believed she would be persecuted upon return to Indonesia because of her Christian faith. This belief stemmed from events Kambey witnessed on May 14, 1998, in Indonesia. Kambey testified that she witnessed riots in Jakarta, during which her employer's building and her car were burned. In fear, she fled from the scene, injuring her foot. According to Kambey, rioters followed her and demanded to know if she was Christian. Refusing to answer, she proceeded home and on the way, witnessed a man being burned by rioters. When she arrived home, Kambey testified that her neighbor advised her not to go inside because her house had been "marked" for attack the following night. Finally, Kambey testified that while she did not return home for "a while," eventually she returned to live at her home and no similar incidents occurred

_____

circumstances" or "extraordinary circumstances" prevented him from filing on time. See 8 U.S.C. § 1158(a)(2)(D). Petitioners do not appeal this determination, and, in any event, we lack jurisdiction to review an IJ's decision that an asylum petition was untimely and that the untimeliness was not excused. Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003).

after the riots until she came to the United States in 2002.

In an oral decision dated October 6, 2003, the IJ denied Lengkong's application for asylum as untimely because Lengkong had not filed the application within one year of his arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). The IJ also found that Lengkong failed to identify circumstances warranting an exception to the one year time bar.

The IJ also denied Lengkong's applications for withholding of removal and protection under the CAT. Although he found Lengkong credible, the IJ found that Lengkong had failed to demonstrate a clear probability of future persecution on account of his religion or ethnicity or that it was more likely than not he would be tortured by the government upon return to Indonesia. Lengkong filed a timely petition for review with the BIA, challenging the IJ's decision. The BIA affirmed the IJ on February 22, 2005, and Lengkong filed this timely petition for review.

## II.

Where, as here, the BIA adopts an IJ's opinion, this Court reviews the IJ's opinion. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). We review the IJ's decision under the substantial evidence standard. Under this standard, the decision must be affirmed if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The IJ's findings must be upheld so long as the evidence in the record does not compel a contrary result. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001).

4

An alien seeking withholding of removal must establish by a "clear probability" that his life or freedom would be threatened in his country of origin because of, *inter alia*, his race or religion. Chang v. INS, 119 F.3d 1055, 1059 (3d Cir. 1997). To meet this burden, the applicant must demonstrate that it is more likely than not that he will be persecuted upon his return. Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998). An applicant can establish eligibility for withholding of removal either by demonstrating past persecution or by showing a likelihood of future persecution. See 8 C.F.R. § 1208.16(b). To establish a claim for protection under the CAT, the applicant must show that it is more likely than not that he will be tortured if removed to the proposed country. 8 C.F.R. § 208.16(c)(2).

## III.

On appeal, Petitioners argue that they qualify for withholding of removal and protection under the CAT based on Kambey's past persecution and because there is a pattern or practice of persecution of Chinese Christians in Indonesia. We address these in turn.

## A.

Our review of the record leads us to agree that substantial evidence supports the IJ's finding that Lengkong and his wife did not qualify for withholding of removal. Lengkong sought to demonstrate his eligibility for withholding based on a fear of future harm upon returning to Indonesia. The IJ found, based on the testimony and evidence presented, that Lengkong had failed to do so.

Our review of the record leaves us satisfied that substantial evidence supports the IJ's determination. First, the IJ pointed out that Lengkong had not provided established sources

5

of background material, such as State Department reports, that might establish a pattern of the practices claimed. Instead, Lengkong produced untranslated local Indonesian papers that lacked familiarity and reliability.[3]

In any event, the documents provided by Lengkong, even if found credible by the IJ, do not show the violence in Indonesia is so widespread as to be considered a pattern of persecution or that Lengkong would be singled out for persecution; this Court has previously held that "widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians" were not "sufficiently widespread as to constitute a pattern or practice." Lie v. Ashcroft, 396 F.3d 530, 537 (3d. Cir. 2005). Additionally, there is nothing in the record to suggest that the government of Indonesia was unable or unwilling to control the forces perpetrating the alleged violence. See id. Further, Lengkong's wife remained in Indonesia for almost four years after the 1998 riots without serious incident, and Lengkong testified that his family still lives in Indonesia. Id. ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of persecution is diminished.").

---

[3]As noted, Lengkong did not initially submit any State Department report on conditions in Indonesia to support his application; however, in this appeal he seeks to introduce the State Department's 2004 Country Report on Human Rights Practices in Indonesia. In seeking to include this report, Petitioners point to this Court's concern with administrative records that contain outdated country reports. Berishaj v. Ashcroft, 378 F.3d 314, 328-32 (3d Cir. 2004). However, because there is no country report in the administrative record, we need not address whether an outdated country report in the record should be supplemented.

Similarly, the events to which Petitioners testified, while unfortunate, are similar to the events in Lie which we deemed insufficient to establish past persecution. See id. at 536 (holding that ethnic Chinese Indonesian's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution"). As we have stated, persecution denotes "extreme conduct," including "threats to life, confinement, torture and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v INS, 12 F.3d 1233, 1240 & n.10 (3d Cir. 1993). Accordingly, we are satisfied that the IJ's finding that Petitioners failed to establish a clear probability that their lives or freedom would be threatened if returned to Indonesia was supported by substantial evidence.

**B.**

Substantial evidence also supports the IJ's decision to deny protection under the CAT. Actions that warrant relief under the CAT must be committed or sanctioned by the home nation's government, Amanfi v. Ashcroft, 328 F.3d 719, 726 (3d Cir. 2003) (citing 8 C.F.R. § 208.18), and Petitioners fail to present such evidence. Accordingly, the decision to deny Petitioners' claim for relief under CAT was supported by substantial evidence.

**IV.**

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we conclude that substantial evidence supports the BIA's decision to deny relief and we will accordingly deny the petition for review.

7